United States District Court
Southern District of Texas
**ENTERED**
April 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS MOLINA-TORRES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-01786 |
| | § | |
| HARRIS COUNTY CONSTABLE | § | |
| PRECINCT 6, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Before the Court is Plaintiff's Motion to Authorize Notice to Potential Plaintiffs. ECF No. 37. For the reasons that follow, the Motion is **GRANTED**, subject to the qualifications on the form of notice discussed below.

**I.    BACKGROUND**

Plaintiff Carlos Molina-Torres worked as a canine deputy for the Harris County Constable Precinct 6 ("Precinct 6") from June 2020 until August 2021. Plaintiff now brings this suit against Defendant Harris County on behalf of himself and all others similarly situated, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA").

Plaintiff challenges two of Defendant's payment practices. First, Plaintiff claims that Defendant failed to pay canine deputies for at home care of their police dogs. Each canine deputy is responsible for caring for the police dog assigned to them, including after hours and on days off. While the last 45 minutes of a canine deputy's eight-hour shift is reserved for canine care, Plaintiff alleges that the canine deputies received no compensation for time caring for their canines between shifts, on weekends, and on days off.

1

Second, Plaintiff alleges that Defendant did not incorporate the canine deputy's $200 monthly incentive payment into its calculation of employees' regular rate for compensatory time purposes. The parties agree that deputies are non-exempt employees. However, when deputies work over 40 hours, they accrue compensatory time ("comp time") instead of overtime. Rodriguez Dep. 33:1-6. Comp time entitles employees to obtain paid time off and is calculated at a rate of 1.5 times that amount of overtime worked. For example, if a canine deputy works an hour beyond their scheduled shift, they're entitled to take an hour and a half off at a later date. Accrued comp time is paid out when a deputy is terminated. ECF No. 38-1 at 17.

The parties have conducted limited initial discovery, and Plaintiff now moves the Court to authorize notice to all Canine Deputies employed by Harris County Constable Precinct 6 within the three years prior to the filing of the Complaint. Plaintiff's proposed notice plan is as follows:

- 7 days from order approving notice: Defendant will produce required information about putative class members in a usable electronic format.
- 14 days from order: Plaintiff will send Notice to employees over mail, email, and text. Defendant will post the notice and consent form at its facilities for sixty days at an open and obvious location. Putative class members have 60 days to opt in.
- 30 days from date notice is mailed: Plaintiff can send a text and email reminder to potential class members who have not responded to notice.

## II. APPLICABLE LAW

An employee may bring an action under the FLSA either individually or as a collective action on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). To become a party plaintiff, each individual must affirmatively opt in to the collective action by submitting written consent. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008). To facilitate this opt-in process, courts have the discretion to facilitate notice to potential plaintiffs early in litigation. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

2

The question of whether notice is appropriate is governed by *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021). *Swales* discarded the prior two-step approach from *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Instead, *Swales* instructs that courts "must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.' Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Swales*, 985 F.3d at 434. In other words, the district court proceeds directly to step two of *Lusardi*—the "similarly situated" inquiry—with the benefit of pre-certification discovery if needed.

In determining whether employees are similarly situated, "there is no one-size-fits-all analysis or mechanical test to apply." *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 337 (5th Cir. 2023). Still, "courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis." *Id.* at 337. Those factors are: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Swales*, 985 F.3d at 437 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

The first factor "assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the potential opt-ins are similarly situated." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018). Class members do not have to hold identical employment to be similarly situated. *Cortez v. Casa do Brasil, LLC*, 646 F. Supp. 3d 847, 853 (S.D. Tex. 2022) Rather, plaintiffs "must show a 'demonstrated similarity' among the purported class members, as well as a 'factual nexus' that binds the class members' claims together

such that hearing the claims in one proceeding is fair to all parties and does not result in an unimaginable trial of individualized inquiries." *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-CV-113, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021) (citing *Swales*, 985 F.3d at 443). "Second, courts look to whether the defendant's defenses are so individualized that it is inefficient or unmanageable to proceed with a representative class." *Cortez*, 646 F. Supp. 3d at 854. Even though a "defense may require specific factual inquiries about each Plaintiff," when the Defendant asserts the defense against each Plaintiff, "collective treatment is less problematic." *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021). Finally, courts examine whether notice would facilitate the primary purposes of FLSA collective actions, namely, "(1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 743 (W.D. Tex. 2018).

Conducting this similarly situated analysis does not require assessing the merits of a plaintiff's claims. *Cortez*, 646 F. Supp. 3d at 855-56. However, it may require deciding "potentially dispositive, threshold matters" such as whether there is a binding arbitration agreement or whether the plaintiff is an employee under the FLSA. *Swales*, 985 F.3d at 441; *Klick v. Cenikor Found.*, 94 F.4th 362, 368 (5th Cir. 2024). Aside from this narrow set of threshold issues, the Court's consideration of merits issues is limited to deciding "whether merits questions can be answered collectively." *Swales*, 985 F.3d at 442.

### III. ANALYSIS

#### a. Whether Notice is Appropriate

4

At the outset, the Court notes that Defendant primarily argues the merits of Plaintiff's claims instead of addressing whether the canine deputies are similarly situated. Finding that none of Defendant's merits arguments presents "threshold issues" that require resolution before notice is dispensed, the Court considers only whether the proffered defenses suggest that the putative class members are not similarly situated.[1]

### i. Claim 1: Payment for After Hours Canine Care

Plaintiff first contends that all canine deputies were not compensated for caring for their canines after hours. Plaintiff provides several pieces of evidence to suggest that this alleged lack of compensation applied to all canine deputies. First, Plaintiff points to the Department Canine Policy, which states, "On a daily basis the Handler shall spend time with the canine, walking, grooming, feeding, and providing medication if needed. Handlers will be compensated for the daily time spent with the canine as set forth in this policy." ECF No. 37-2 at 10. The policy's provision on payment states, in full, "Canine Handlers who are responsible for the care, feeding, walking, bathing and administering medications for the canine shall be allowed 45 minutes per work day to care for the dog, with total compensation for a 40 hour week." *Id.* at 11.

The policy indicates two things. First, although the last 45 minutes of each canine deputy's shift is specifically set aside to care for their canine, canine deputies were also required to care for their canines between shifts, on weekends, and on days off. Second, the payment policy only mentions compensation for the 45 minutes of care provided during the deputy's shift. Caring for a

---

[1] Defendant also argues that the notice is inappropriate because there are only a handful of eligible canine deputies, and thus there is not sufficient numerosity. "A collective action under the FLSA does not have the numerosity requirement that is in Federal Rule of Civil Procedure 23(a)." *Cantu v. Vitol, Inc.*, No. CIV. A. H-09-0576, 2009 WL 5195918, at *5 (S.D. Tex. Dec. 21, 2009). "Because numerosity is not a requirement for a collective action under the FLSA, the fact that the class in this case is so small does not defeat conditional certification." *Id.* As was the case in *Cantu*, the size of the putative class here does not affect whether notice is appropriate.

dog undoubtably requires some amount of work between shifts and on days off, yet the policy's payment provision neglects to address payment for this time. Plaintiff's timesheets and overtime records, which show he received essentially no compensation for caring for his canine between shifts, are consistent with this understanding of the Department Canine Policy. ECF No. 37-3; ECF No. 38-2.[2]

Testimony from Captain Joe Martinez, who previously supervised the canine deputies in Precinct 6, further confirms that canine deputies were uniformly not paid for this time:

> Q: Does the department pay the canine deputy for the additional time that they spent caring for their canine on the weekends or on their days off?
> A: I've never had a deputy put in for that time while I was there.

Martinez Dep. 22:23-23:13. Martinez also stated that the Department Canine Policy's provisions on payment did not address or provide for compensation for time spent caring for the canines on days off or after the end of a deputy's eight-hour shift. Martinez Dep. 26:13-22. Combined, this evidence suggests that canine deputies are similarly situated with respect to their lack of compensation for this time.

Defendant argues that the canine deputies are not similarly situated because they likely spent different amounts of time caring for their police dogs, creating an individualized inquiry. It is undoubtedly true that if Defendant's policy is found to have violated the FLSA, the Court will need to make individualized assessments of how much time each deputy spent caring for their canine to determine the precise amount of damages. However, this is not the type of individualized

---

[2] As Defendant points out, it appears that Plaintiff did receive canine-related overtime twice. On September 28, 2020, he reported four hours of overtime to pick up a canine cage and drop it off at his residence. ECF No. 38-3 at 9. On July 14, 2021, he reported two hours of overtime related to an arrest and an additional 45 minutes of overtime related to canine care. ECF No. 38-3 at 7. While the former shows that Plaintiff was once compensated for picking up supplies for his canine, it does not show he was routinely compensated canine care. As for the latter, it indicates that Plaintiff sought compensation for the 45 minutes of canine care following his shift that the policy states he is entitled to. Neither indicates that Plaintiff, or the other deputies, were routinely compensated for at home canine care between shifts or on days off.

determination that precludes proceeding as a collective. "Those variations go to the magnitude of the effect of the common decision on individual [employees] rather than undermining the fact that it was a common policy, plan, or practice that affected them all. Variations in the quantity of time lost as uncompensated goes to damages, not liability." *Serrano v. Republic Servs., Inc.*, No. 2:14-CV-77, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2017); *Segovia*, 2021 WL 2187956, at *9 (same).

Defendant attempts to analogize this case to *Kelly v. Healthcare Services Group, Inc.*, where the court found that a group of employees alleging violations related to the employer's rounding policy were not similarly situated. No. 2:13-CV-00441-JRG, 2015 WL 3464131, at *3 (E.D. Tex. June 1, 2015). In doing so, the court noted that the employer's rounding policy injured employees who habitually clocked in early and clocked out late, but benefited those who clocked in late and clocked out early. *Id.* at *3. Absent some common policy or practice requiring the employees to clock in early and clock out late, the court found that the plaintiffs could not show a common injury resulted from the rounding policy. *Id.* at *4. Unlike in *Kelly*, where an individualized inquiry was necessary to determine the effect of the rounding policy on each employee, here it is clear that the payment policy impacted canine deputies uniformly.

Finally, Defendant contends that, because Plaintiff has not shown that he or any other canine deputy requested and was denied compensatory time for the hours spent caring for their canines, they cannot assert any FLSA violation. Where an employee is underpaid because they do not report their overtime hours, the relevant question is whether the employer had actual or constructive knowledge that the employee was working overtime. *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009); *Nieddu v. Lifetime Fitness, Inc.*, 38 F. Supp. 3d 849, 853 (S.D.

Tex. 2014). Whether Defendant had actual or constructive knowledge is ultimately a merits question, and, as explained above, "[t]he issue at this stage is not whether [the plaintiff] will ultimately prevail in proving all the elements of the alleged FLSA violation," but whether the court can determine the merits on a class-wide basis. *Sterling v. Greater Houston Transportation Co.*, No. CV H-20-910, 2021 WL 2954663, at *2 (S.D. Tex. July 14, 2021). Thus, the Court will defer deciding whether Plaintiff has met his burden until consideration of the merits are appropriate. Moreover, Harris County's defense on this basis does not suggest that proceeding as a collective would be inappropriate—whether the canine deputies' failure to request overtime precludes them from proving an FLSA claim can be decided on a collective basis without regard to each deputies' individual circumstances. In sum, the Court concludes that it can determine the central merits of this claim on a collective basis and that Plaintiff has shown the putative class is similarly situated for the purposes of pressing this claim.

### ii. Claim 2: Failure to Include $200 Incentive Pay Bonus in Comp Time Pay Rate

Plaintiff next alleges that the $200 monthly incentive payment that all canine deputies receive is a non-discretionary bonus and should have been included in calculating their regular rate for purposes of comp time. Although Defendant contests the merits of this claim, Defendant raises no discernable argument that the canine deputies are not similarly situated with respect to the $200 bonus claim. To the contrary, it seems all canine deputies received this monthly incentive payment, as evidenced by the canine deputy job posting. ECF No. 37-8; *see also* ECF No. 37-9 (Plaintiff's pay records, listing the regular incentive payment). Further, Cynthia Rodriguez, who is responsible for Precinct 6's payroll, testified that the $200 incentive payment is not included in calculations of the canine deputies' regular pay rate. Rodriquez Dep. 31:23-25, 32:1-10. Thus, the canine deputies are similarly situated with respect to this incentive pay, and whether it was a violation of the FLSA

8

to omit the monthly incentive pay from the canine deputies' regular rate can be resolved on a collective basis.

Defendant argues on the merits that, because the deputies are given accrued comp time instead of paid overtime, any failure to include the $200 incentive pay when calculating the deputies' regular rate has no actual impact on the payment the canine deputies received. However, the record indicates that there are times when accrued comp time is paid out, such as when an employee is terminated. ECF No. 38-1 at 17. "If compensation is paid to an employee for accrued compensatory time off, such compensation shall be paid at the regular rate earned by the employee at the time the employee receives such payment." 29 U.S.C § 207(o)(3)(B). Therefore, contrary to Defendant's assertion, an error in calculating an employee's regular rate may impact the amount of compensation that employee receives in situations where accrued comp time is paid out. At this stage, the Court need not determine whether Defendant was obligated to include the incentive pay in calculating the canine deputies' regular rates. Instead, it is sufficient to note that Defendant's defense does not create any individualized questions about whether the failure to include the incentive payments when calculating the deputies' regular rates was an FLSA violation.

### b. Whether Plaintiff's Proposed Form of Notice is Appropriate

The parties disagree over the details of how class members should be notified. Each of Defendant's objections are addressed in turn below.

#### i. Scope of the Collective

Plaintiff's proposed collective is: "All Canine Deputies employed by Harris County within the last three (3) years prior to the filing of the Complaint." ECF No. 37 at 1. Elsewhere, such as in Plaintiff's proposed notice, Plaintiff limits the collective to include only canine deputies employed in Precinct 6. ECF Nos. 37-10, 37-11, 37-12. As a preliminary matter, the Court notes

9

that notice shall only be provided to canine deputies in Precinct 6, as Plaintiff has not shown that the relevant policies at issue in this dispute applied to deputies in other precincts.

Defendant objects to this definition on the basis that the applicable period should be two years, not three. While the FLSA provides for a two-year statute of limitations, it extends the period to three years for claims arising out of the employer's willful violations. *See* 29 U.S.C. § 255. "To show willfulness, a plaintiff must demonstrate that an employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Steele v. Leasing Enters.*, 826 F.3d 237, 248 (5th Cir. 2016) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988)).

Defendant summarily argues that Plaintiff has not shown willfulness, and thus notice extending back three years is not appropriate. Pre-*Swales*, allegations of willfulness were sufficient to warrant notice covering a three-year period. *See Page v. Nova Healthcare M'gmt, L.L.P.*, Civ. A. No. H-12-2093, 2013 WL 4782749, at *7 (S.D. Tex. Sept. 6, 2013); *Walker v. Honghua Am., L.L.C.*, 870 F. Supp. 2d 462, 472 (S.D. Tex. 2012). Post-*Swales*, courts have continued to apply this rule, finding that allegations of willfulness merit notice spanning a three-year period. *See Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 725 (S.D. Tex. 2021); *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *16 (E.D. Tex. June 13, 2022); *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092-MAC, 2022 WL 4493733, at *2 (E.D. Tex. Sept. 20, 2022), *report and recommendation adopted*, No. 1:20-CV-92, 2022 WL 4491070 (E.D. Tex. Sept. 26, 2022). As the court in *Young* found, there is "no reason to delay notice pending discovery on willfulness in a case such as this where the same evidence of willfulness will apply to all similarly situated potential plaintiffs who receive notice." 534 F. Supp. at 725. The Court finds that Plaintiff's allegations of willfulness suffice at this stage.

However, the limitations period for the putative class members' claims is not tolled until they opt in to the case. *See Quintanilla v. A & R Demolitina, Inc.*, No. CIV.A. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005) (collecting case). Therefore, the three-year period should be measured from the date the Court approves notice, not the date Plaintiff's Complaint was filed. *See Quintanilla*, 2005 WL 2095104, at *16; *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010); *Garcia-Alvarez*, 2022 WL 2119542, at *16; *Ramos v. Capitan Corp.*, No. MO:16-CV-00075, 2016 WL 8674617, at *5 (W.D. Tex. May 18, 2016); *Wesley v. Experian Info. Sols., Inc.*, No. 4:18-CV-00005, 2018 WL 3105763, at *3 (E.D. Tex. June 25, 2018). The proposed notice should be modified to reflect this change.

### ii. Methods of Providing Notice

Plaintiff seeks to provide notice to potential class members by mail, email, text message, and a general posting on the employee notice board in Precinct 6. Additionally, Plaintiff wishes to send notice reminders via text and email to class members who have not responded near the end of the opt-in period. Defendant objects, arguing that notice via email for current employees and regular mail for former employees is sufficient to inform them of the action.

"It is well-settled that courts have wide discretion in deciding the notice's content and how notice is distributed." *Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 488 (S.D. Tex. 2020); *Young*, 534 F. Supp. 3d at 725. The Court finds that notice via mail, email, and text message is appropriate here. "Courts in this district . . . regularly allow notice by both mail and e-mail." *Id.* at 489. Courts, including this one, have increasingly also allowed notice through text messages. *See Cortez*, 646 F. Supp. 3d at 851, 857-58 (Ellison, J.); *Alvarez v. NES Glob. LLC*, No. 4:20-CV-1933, 2021 WL 3571223, at *5 (S.D. Tex. Aug. 11, 2021) (Ellison, J.). "[P]roviding notice via text message in addition to other traditional notice methods will almost always be more appropriate in

modern society." *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020). In order to "further the remedial purpose of the FLSA," courts often allow plaintiffs to provide notice through text message, email, and regular mail. *Id.*; *Thrower*, 484 F. Supp. 3d at 489; *Young*, 534 F. Supp. 3d at 726; *Qazi v. Stage Stores, Inc.*, No. 4:18-CV-780, 2019 WL 2523564, at *3 (S.D. Tex. June 18, 2019). As a result, the Court finds that notice via text message is appropriate in addition to notice by email and mail.

In contrast, providing notice through a general posting in Defendant's work site is improper here. Per the list disclosed by Defendant, the putative collective includes roughly seven canine deputies, including Plaintiff. ECF No. 38-6 at 3. Only one is currently employed by Defendant. Thus, requiring Defendant to post notice in the workplace will not meaningfully help facilitate notice. *See Garcia-Alvarez*, 2022 WL 2119542, at *15 (declining to require employer to post notice in the workplace because no current employees were eligible to participate in the litigation).

Plaintiff also seeks to send reminders through text and email to individuals who have not opted in within 30 days of notice being sent. Courts differ as to whether reminders are appropriate. Some find that reminders are useful in ensuring notice is received. *Young*, 534 F. Supp. 3d at 726; *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 776 (S.D. Tex. 2015). Others maintain that they are unnecessary. *Moreno v. Nat'l Oilwell Varco, L.P.*, No. 4:17-CV-2325, 2017 WL 5904909, at *8 (S.D. Tex. Nov. 29, 2017); *In re Wells Fargo Wage & Hour Emp. Pracs. Litig. (No. III)*, No. H-11-2266, 2013 WL 2180014, at *3 (S.D. Tex. May 17, 2013). In this case the Court finds that a reminder notification through *either* text or email is appropriate.

### iii.   Disclosure of Officers' Contact Information

In order to facilitate notice, Plaintiff requests the Court order Defendant to provide the names, addresses, email addresses, telephone numbers, and any employee number or unique

identifier of the putative class members in an electronic format. Courts routinely order defendants to provide the names, addresses, emails, and phone numbers of employees to facilitate notice in FLSA collective actions. *See, e.g.*, *Cortez*, 646 F. Supp. 3d at 851, 858; *Thrower*, 484 F. Supp. 3d at 492. Plaintiff also requests the relevant employees' dates of birth and the last four digits of their social security numbers so that Plaintiff can skip trace those whose notice is returned undeliverable. Courts likewise often require defendants to provide this information. *See, e.g.*, *Flowers v. MGTI, LLC*, No. CIV.A. H-11-1235, 2012 WL 1941755, at *5 (S.D. Tex. May 29, 2012) ("If, however, notices are returned to plaintiffs' counsel as undeliverable, the plaintiffs may request an order requiring the defendants to produce social-security numbers and dates of birth for these individuals."); *Cortez*, 646 F. Supp. 3d at 851 (ordering defendants to produce dates of birth and the last four digits of social security numbers for all putative class members).

Nonetheless, Defendant objects, contending that it should not have to provide this information because of Texas Government Code § 552.1175, which is part of the Texas Public Information Act ("TPIA"). Section 552.1175 provides an exception to the TPIA's public disclosure requirements and limits public access to contact information for peace officers and other government officials.

In interpreting Texas statutes, "[w]e need not and should not seek the answer from any source other than the statute's plain language." *See Rodriguez v. Safeco Ins. Co. of Indiana*, 684 S.W.3d 789, 793 (Tex. 2024). Section 552.1175 is solely concerned with what information is disclosed to the public under the TPIA. Nothing in its text indicates that it applies to what information may be obtained during non-TPIA litigation. In fact, the Court is aware of only two case that have invoked § 552.1175, both of which concerned claims under the TPIA. *See Miller v. Gregg Cnty.*, 546 S.W.3d 410, 416 (Tex. App. 2018); *Texas Comptroller of Pub. Accts. v. Att'y*

*Gen. of Texas*, 354 S.W.3d 336, 345 (Tex. 2010). Defendant does not identify any authority supporting the claim that § 552.1175 limits what information may be disclosed during discovery generally or to provide notice in a FLSA collective action specifically. Absent legislative or precedential support, Defendant asks the Court to bring into existence a new rule that law enforcement and criminal justice personnel are immune from the ordinary rules governing discovery. The Court lacks the authority to do so.

## IV.     CONCLUSION

Plaintiff's Motion to Authorize Notice to Potential Plaintiffs, ECF No. 37, is **GRANTED** subject to the modifications identified in this Order. Plaintiff may provide notice to all canine deputies employed in Precinct 6 within the three (3) years prior to the entry of this Order. The Court approves the proposed forms of notice and consent form submitted by Plaintiff, ECF Nos. 39-2, 37-11, 37-12. It is hereby **ORDERED** that the Parties shall comply with the following deadlines and directives:

Within ten (10) days of this Order, Defendant shall provide Plaintiff with the names, last known addresses, email addresses, phone numbers, and dates of employment of the putative class members in a usable electronic format. If notices are returned to Plaintiff's counsel as undeliverable, Plaintiff may move for an order requiring Defendant to produce social-security numbers and dates of birth for these individuals.

Within twenty (20) days of this Order, Plaintiff will mail, email, and text the approved notice and consent form to the putative class members.

Thirty (30) days after notice is mailed, Plaintiff may either email or text a reminder notice and consent form to the putative class members.

The putative class members shall have sixty (60) days from the date notice is mailed in which to return their signed consent forms to counsel for Plaintiff for filing with the Court.

**IT IS SO ORDERED.**

Signed at Houston, Texas on April 19, 2024.

                                                  Keith P. Ellison
                                                  United States District Judge